In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-4347

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH JACKSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:00 CR 195—**Rudy Lozano**, *Judge.*

ARGUED JUNE 3, 2002—DECIDED AUGUST 7, 2002

Before BAUER, RIPPLE and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Appellant Joseph Jackson was convicted on two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), one count of carrying a firearm in connection with drug trafficking, 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). Jackson was sentenced to 138 months imprisonment. He appeals his conviction and sentence, arguing: (1) the district court erred in denying his motion to suppress evidence obtained in a search; (2) there was insufficient evidence to sustain a conviction under section 924(c); (3) the district court erred in denying his motion to suppress his *Miranda* waiver and post-arrest statement; and (4) the district court

erred in enhancing his sentence for obstruction of justice, pursuant to section 3C1.1 of the Sentencing Guidelines. Because we find Jackson's arguments without merit, we affirm.

## BACKGROUND

On March 29, 2000, at 12:45 a.m., two Gary Police officers, including Officer Eakins, were patrolling along Route 20, near Highway 51, in Gary, Indiana. Officer Eakins regularly patrolled this area and was aware that truck drivers often park in the area at night. Officer Eakins also knew this location was routinely used for the sale of drugs and the provision of prostitution services. The officers observed a car turn into a restaurant parking lot without signaling. They stopped the car and found Joseph Jackson in the front passenger seat. In the car, the officers also found a firearm and a small plastic bag containing a white, rock-like substance that tested positive for cocaine. Jackson had no permit for the firearm and was a convicted felon. Jackson and the driver were arrested. On June 20, 2000, at 12:30 a.m., Officer Eakins was patrolling the same area when he observed a car driving around the same restaurant parking lot. The car pulled alongside several trucks in the lot and sat next to each truck for a short period of time before moving on to the next truck. Based on Officer Eakins' experience, he believed this pattern was consistent with either prostitution or the selling of narcotics. When the officer stopped the car, he again found Jackson in the passenger seat and the same individual in the driver's seat. He also found cocaine, packaged in 13 individual baggies, under Jackson's foot. Both individuals were arrested.

On November 3, 2000, at 4:02 a.m., again patrolling the same area, Officer Eakins observed someone walking in the middle of the right lane on Route 20, a four-lane high-

way. Concerned for the safety of this person, as well as drivers on the highway, the officer stopped the pedestrian and immediately recognized him as Jackson.

Officer Eakins and another officer told Jackson that he was in violation of the law for obstructing traffic. They conducted a pat-down search and found a loaded .22 caliber revolver with an approximately 6-inch barrel in Jackson's waistband. Jackson was arrested and searched. A clear plastic bag, containing 26 small baggies, each of which held a white-rock substance, later determined to be cocaine, was found on his person.

On November 6, 2000, Gary police officers interviewed Jackson. He admitted to possessing crack cocaine on November 3, 2000, and he explained that he had purchased dime bags of the drug from his cousin and intended to sell them at truck stops along Route 20 to truck drivers. He also admitted to possessing a firearm at the time of his arrest.

Prior to trial, Jackson filed a motion to suppress the firearm and drugs seized on November 3, 2000. Jackson also moved to suppress the statement he gave to law enforcement officers on November 6, 2000, arguing that this statement was obtained in violation of *Miranda v. Arizona*. After separate evidentiary hearings, the district court denied both motions.

Jackson was tried by a jury and convicted on 4 counts: two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), one count of carrying a firearm in connection with drug trafficking, 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). At sentencing, the district court enhanced Jackson's sentence for obstruction of justice, based on its finding that Jackson falsely testified at the suppression hearing. Jackson was sentenced to serve 138 months imprisonment. This appeal followed.

ANALYSIS

*A.  Motion to Suppress Evidence*

Jackson first argues that the district court erred when it denied his motion to suppress the firearm and crack cocaine recovered from his person on November 3, 2000. We review a district court's findings of fact in a suppression hearing for clear error and its conclusions of law *de novo*. *United States v. Meyer*, 157 F.3d 1067, 1079 (7th Cir. 1998). A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court is "left with the definite and firm conviction that a mistake has been made." *United States v. Gravens*, 129 F.3d 974, 978 (7th Cir. 1997). Given the fact-specific nature of motions to suppress, "reviewing courts give special deference to the trial court that heard the testimony and had the best opportunity to observe the witnesses at the suppression hearing." *United States v. French*, 291 F.3d 945, 951 (7th Cir. 2002).

Jackson argues that the officers' search of his person and seizure of the drugs and the firearm on November 3, 2000, violated his Fourth Amendment rights. The Fourth Amendment protects against "unreasonable searches and seizures," and generally police officers must have probable cause before making an arrest or conducting a search. This amendment does not preclude any encounter between the police and citizens. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000). Under the principles established in *Terry v. Ohio* and its progeny, even without probable cause, police may conduct an investigatory stop, limited in scope and executed through the least restrictive means reasonable. *Terry v. Ohio*, 392 U.S. 1 (1968). To make an investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot. *Terry*, 392 U.S. at 30; *Swift*, 220 F.3d at 506. Reasonable suspicion is "some objective manifestation that

the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981).

Evaluating the reasonableness of a *Terry* stop, we first look to see whether the officers' actions were justified at the inception of the stop; next, we examine whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place. *Swift*, 220 F.3d at 506. This analysis "involves a consideration of 'the totality of circumstances known to the officers at the time of the stop'" *Id.* (quoting *United States v. Quinn*, 83 F.3d 917 (7th Cir. 1996)). This includes the "experience of the law enforcement agent and the behavior and characteristics of the suspect." *United States v. Odum*, 72 F.3d 1279, 1284 (7th Cir. 1995). An officer may also consider whether the location of the stop is a "high crime area." *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999) ("courts may consider the defendant's presence in a high crime area as part of the totality of circumstances confronting the officer at the time of the stop."). In addition, an officer's prior dealings with the particular individual or knowledge of a criminal record might also contribute to the basis for reasonable suspicion. *United States v. Mitchell*, 256 F.3d 734, 737 (7th Cir. 2001) (discussing officer's prior knowledge of defendant's history); *United States v. Walden*, 146 F.3d 487, 491 (7th Cir. 1998) ("a criminal record in conjunction with other information can form the basis of a reasonable suspicion").

A proper *Terry* stop must be reasonable in scope and duration and officers are permitted to take reasonable steps to insure their own safety. *Terry,* 392 U.S. at 30. Accordingly, the search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer." *Id.* at 29. This includes conducting a pat-down search of the outer clothing of the stopped individual. *Id.* at 29-30.

In light of these standards, we agree with the district court that the police properly seized the firearm from Jackson's waistband. Officer Eakins and another Gary officer observed Jackson walking down the middle of a four-lane highway at approximately 4:20 a.m., conduct which constitutes the offense of obstructing traffic. The officers were aware that they were patrolling a high crime area known to be the location of drug traffic and the sale of prostitution. Upon nearing Jackson, Officer Eakins recognized him from the two previous arrests in which he recovered drugs and a firearm from Jackson at almost the same location. Eakins also knew that Jackson was a convicted felon. On this basis, it was reasonable to suspect that Jackson was engaging in drug-related activity. These facts amount to the requisite reasonable suspicion to make the investigatory stop under *Terry*. With the knowledge that Jackson was armed in the past, the officers were appropriately concerned for their safety; they conducted a pat-down search, limited in scope to only Jackson's outer clothing, and found a firearm in his waistband. This firearm was properly seized and the district court did not err in denying Jackson's motion to suppress.

Similarly, the officers' seizure of the crack cocaine was lawful as well. It is well established that after an officer makes a lawful arrest, he may conduct a warrantless search of the arrestee's person incident to that arrest. *United States v. Rodriguez*, 995 F.2d 776, 778 (7th Cir. 1993). Such a search will be upheld as lawful where it "was contemporaneous with the arrest, was conducted to prevent seizure of a weapon or destruction of evidence, and was limited to the area within the arrestee's immediate control." *United States v. Queen*, 847 F.2d 346, 352 (7th Cir. 1988). Given Eakins' knowledge of Jackson's previous record, the police had probable cause to believe that Jackson was a felon in possession of a firearm. Recovery of the crack cocaine in Jackson's pocket was the product of

a lawful search incident to arrest. Accordingly, we find that the district court properly denied Jackson's motion to suppress the crack cocaine.

### B.   924(c) Conviction

Next, Jackson contends that there was insufficient evidence to convict him under 18 U.S.C. § 924(c). We note at the outset that Jackson bears a "heavy burden" in making this challenge. *United States v. James*, 923 F.2d 1261, 1267 (7th Cir. 1991). In evaluating his claim, we review all the evidence and all reasonable inferences that can be drawn from the evidence in the light most favorable to the government. *Id.* The test is whether, after viewing the evidence, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). We will overturn a jury's verdict only if "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Moore*, 764 F.2d 476, 478 (7th Cir. 1985) (internal citations omitted).

To sustain a conviction under section 924(c), the government must prove (1) that the defendant carried a firearm, and (2) that the carrying was during and in relation to the crime of possession with intent to distribute cocaine. *Young v. United States*, 124 F.3d 794, 800 (7th Cir. 1997). Jackson concedes that the government presented sufficient evidence that he was carrying a firearm; however, he maintains that the conviction cannot stand because there is no evidence that he was in the process of facilitating a drug transaction at the time the officers stopped him and recovered the firearm. As a result, he argues, the government failed to satisfy the second prong of this inquiry. We disagree.

Under section 924(c), to establish that the firearm was used "during and in relation to" the drug offense, the gov-

ernment must establish that the defendant transported a firearm during a drug offense. The focus of this analysis rests on the location of the firearm in relation to the drugs: "if the drugs and the gun are together in the same place, it is nearly an inescapable conclusion" that they satisfy this prong for a conviction. *United States v. Molina,* 102 F.3d 928, 932 (7th Cir. 1996) (the relation between the firearm and the drugs is "the core of the offense"). This provision reflects the frequent use of firearms in drug transactions to protect both the dealer and the drugs. *See Young,* 124 F.3d at 801 ("The self-protection motive establishes the relation between drugs and guns"); *United States v. Hubbard,* 61 F.3d 1261, 1270 (7th Cir. 1995) ("firearms are recognized as tools of the drug trade; . . . possession of a weapon is often a hallmark of drug trafficking.").

We believe that these standards were satisfied in Jackson's case. At trial, the jury heard testimony that at the time he was searched, he was carrying a loaded firearm in his waistband and a quantity of cocaine packaged for distribution in 26 plastic baggies. The jury also heard that in a post-arrest statement, Jackson admitted to law enforcement agents that his intention was to sell the cocaine to truck drivers along Route 20, which was in close proximity to where police stopped him. There is more than sufficient evidence in the record to support the "during and in relation to" element in this case to sustain a conviction under section 924(c).

### C.  *Motion to Suppress* Miranda *Waiver and Statement*

Jackson also claims that the district court erred in denying his motion to suppress his post-arrest statement because he did not knowingly and voluntarily waive his *Miranda* rights. We review whether Jackson's *Miranda* waiver was voluntary *de novo. United States v. Smith,* 218 F.3d 777, 780 (7th Cir. 2000). However, any findings

of fact and credibility determinations are reviewed for clear error. *United States v. Walker*, 272 F.3d 407, 412 (7th Cir. 2001).

At the suppression hearing, three officers testified that they were present during Jackson's questioning. This testimony established that before Jackson's interview, *Miranda* warnings were given, Jackson voluntarily agreed to waive his rights and be interviewed, and the officers presented Jackson with a waiver of rights form, which he signed. The officers also established that they read the contents of the *Miranda* waiver form aloud, asked Jackson if he understood his rights, and had Jackson initial each right and sign to acknowledge his willingness to talk. Although the waiver of rights form could not be located, an FBI 302 form indicated that *Miranda* rights were administered. Following the evidentiary hearing, the district court denied Jackson's motion to suppress, holding that his statement was made voluntarily after a knowing and intelligent waiver of his *Miranda* rights.

When a defendant makes a post-arrest statement, the government bears the burden of proving at trial that the statement was made following a voluntary, knowing and intelligent waiver of *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). Jackson claims that because the government could not locate the signed *Miranda* waiver form, it failed to satisfy this burden.

The absence of a signed waiver is not conclusive evidence on the issue of whether a defendant waived his rights. *United States v. Banks*, 78 F.3d 1190, 1198 (7th Cir. 1996), *vacated on other grounds*, 519 U.S. 990 (1996). Rather, whether a person in custody knowingly and voluntarily waives his *Miranda* rights depends upon the totality of the circumstances. *Id*. A waiver need not be express, but may be "inferred from the defendant's understanding

of his rights coupled with a course of conduct reflecting his desire to give up his right to remain silent and have the counsel of an attorney." *Id.* (citing *Fare v. Michael C.*, 442 U.S. 707, 724 (1979)). Courts typically look at such factors as defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961).

At the suppression hearing, the district court heard the testimony of both Jackson and the government witnesses. The court made a credibility determination and held that despite the lost *Miranda* waiver form, Jackson was in fact advised of his *Miranda* warnings and voluntarily agreed to waive them. Given the deferential standard of review, we find no error in the district court's conclusion that Jackson made a knowing and voluntary waiver of his *Miranda* rights.

### D.  *Obstruction of Justice Sentencing Enhancement*

Finally, Jackson argues that the district court erred in imposing a two-point enhancement pursuant to section 3C1.1 of the Sentencing Guidelines. This section provides: "if the defendant willfully impeded or obstructed, or attempted to impede or obstruct, the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels." U.S. SENTENCING GUIDELINES MANUAL § 3C1.1. Section 3C1.1 includes perjury, which is defined as a defendant's "'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Turner*, 203 F.3d 1010, 1020 (7th Cir. 2000) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). Before

imposing the enhancement, the district court must make independent findings as to all of the elements of perjury: falsity, willfulness, and materiality. *Turner*, 203 F.3d at 1020. We review *de novo* whether the district court made the appropriate findings to support an obstruction of justice enhancement and underlying findings of fact are reviewed for clear error. *United States v. Carrera*, 259 F.3d 818, 831 (7th Cir. 2001).

At the suppression hearing, Jackson testified that he was walking on the side of the road when the officers stopped him and that he did not have crack cocaine in his pocket. The officers testified that they observed him walking in the middle of the road and that they did in fact find crack cocaine in his pocket. The district court made a credibility determination that the officers' testimony was truthful and that Jackson's version was false. On this basis, the district court imposed the section 3C1.1 enhancement.

Jackson maintains that his testimony reflects his best recollection of what happened on the night he was arrested. He argues that by imposing the enhancement, the district court has unconstitutionally chilled his right to testify. He claims that this application of section 3C1.1 forces a defendant to choose between presenting a vigorous defense with his version of the evidence, or face the probability of an enhanced sentence. As a result, he asserts, the district court improperly applied the enhancement.

We disagree. Because the district court was in the best position to evaluate Jackson's truthfulness, we grant special deference to its determination. *See United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir. 1996) (district court is in best position to determine whether defendant committed perjury and this determination enjoys a presumption of correctness). The district court reviewed Jackson's

testimony and assessed his credibility. The court found his testimony untruthful as to several points material to the issue raised in the suppression hearing; that is, whether there were sufficient facts to support reasonable suspicion for a *Terry* stop. The court's finding that Jackson lied was sufficient support for the two-point enhancement under section 3C1.1. *See United States v. Contreras*, 937 F.2d 1191, 1194 (7th Cir. 1991) (district court's independent finding that defendant was not truthful on the witness stand was sufficient to apply section 3C1.1). Moreover, the Supreme Court has explicitly held that a defendant cannot contend that section 3C1.1 is unconstitutional on the simple basis that it distorts a defendant's decision to testify or remain silent. *Dunnigan*, 507 U.S. at 96; *see also, Contreras*, 937 F.2d at 1195 (section 3C1.1 does not "impinge upon any constitutionally protected right when applied to increase the sentence of a defendant who testifies untruthfully at trial"). "A defendant's right to testify does not include the right to commit perjury." *Dunnigan*, 507 U.S. at 96. We believe that the district court acted within its discretion when it imposed the two-level enhancement pursuant to section 3C1.1.

## CONCLUSION

For the foregoing reasons, we AFFIRM Jackson's conviction and sentence.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*
