**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Derrick D. DAVIS, Defendant–Appellant.**

**No. 02–2146.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 2, 2002.

Decided Oct. 29, 2002.

Before BAUER, EASTERBROOK, and ROVNER, Circuit Judges.

## ORDER

Derrick Davis pleaded guilty to possession with intent to distribute more than five grams of crack, 21 U.S.C. § 841(a)(1), reserving the right to appeal from the denial of his motion to suppress the drugs and statements that led to the charges, Fed.R.Crim.P. 11(a)(2). Davis contends that the evidence should have been suppressed since the officer who obtained the evidence "seized" him in his car in violation of the Fourth Amendment. Because the arresting officer actually approached Davis to ask him questions, and thus did

not "seize" him, and because the officer thereafter had probable cause to arrest Davis for drunk driving, we affirm.

On August 28, 2001, Davis began drinking beer around noon and continued to drink throughout the day. At midnight Davis and his friend, Michael Divine, drove in Davis's Oldsmobile to Niecey's Tavern, a bar located at 49th Street and Bunkum Road in Washington Park, Illinois. Niecey's had hired Divine to take photographs at the bar, and after he finished his work, he and Davis left in the Oldsmobile around 2:00 a.m., having there drunk two beers apiece. Davis and Divine planned to go to another club in Washington Park, but as Davis backed his car out of the parking lot onto 49th Street, over forty state and federal law enforcement officials arrived in ten police cars (some marked, other unmarked) and an oversized police van. The police came to raid the bar, where they expected to find criminals with outstanding warrants.

As Brandon Whitaker, an Edwardsville, Illinois, police officer, followed his partner out of the van, he saw Davis's Oldsmobile pull up to the stop sign in front of Niecey's. Agent Whitaker, his partner, and a police dog then chased a suspect who had fled in the opposite direction on 49th Street, and after the suspect was subdued, Agent Whitaker returned his attention to the front of the bar. There he noticed that Davis's Oldsmobile still remained stopped at the intersection, even though Whitaker estimated that one to two minutes had passed since he first saw the car pull up to the stop sign.

Whitaker was responsible for securing the front of the bar, and he thought it strange that the Oldsmobile had not continued through the intersection, as no cars or obstacles blocked its path. So he walked up to the driver's side of the car, looked in, and casually asked Davis and Divine, "What is going on guys?" Davis, who was not wearing a seatbelt, had glazed, bloodshot eyes, and when Whitaker asked if he had been drinking, Davis responded slowly, slurring his words. After smelling alcohol on Davis's breath, Whitaker concluded that Davis was drunk and asked him to get out of the car and lie down on the ground. When a background check revealed that Davis did not have a valid driver's license and that the Oldsmobile was registered to someone else (Davis had just bought the car and owed the previous owner another payment), Whitaker placed Davis under arrest. Because Divine also looked drunk and did not have a valid driver's license, Whitaker decided to have the Oldsmobile towed. Following standard procedure, Whitaker inventoried the car and, after unlocking the glove compartment, found two bags of crack.

Whitaker then took Davis to the St. Clair County jail, where he made a statement the following afternoon. After receiving Miranda warnings and talking to his girlfriend on Whitaker's cell phone, Davis admitted that on August 28 he had been drinking since noon, that he had stopped his car in front of Niecey's to watch the police raid the bar, that he bought the crack found in the glove compartment, and that he had broken the crack down into smaller pieces in order to sell it. A grand jury then indicted Davis, and he moved to suppress the evidence obtained after Agent Whitaker approached his car, including the crack found at the scene and his confession. The district court denied the motion and ordered Davis to stand trial the following month. Davis then entered a conditional guilty plea, reserving the right to appeal the suppression issues, and he was sentenced to 120 months' imprisonment, the mandatory minimum in light of his prior conviction for

a felony drug offense. *See* 29 U.S.C. § 841(b)(1)(B).

■ In reviewing a ruling on a motion to suppress, we examine questions of law de novo and the district court's findings of fact for clear error. *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Yang,* 286 F.3d 940, 944 (7th Cir.2002). Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may detain a suspect upon the officer's reasonable suspicion that the suspect has been or will engage in criminal activity, provided that the detention is not unreasonably intrusive. *Id.* at 30, 88 S.Ct. 1868; *see also Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Jackson,* 300 F.3d 740, 745 (7th Cir.2002). On appeal Davis contends that Agent Whitaker *Terry*-stopped him when he walked up to the Oldsmobile, that Whitaker approached the car without reasonable suspicion that Davis was or would be involved in a crime, and that the detention was unreasonably intrusive since Whitaker could have waived him through the intersection instead of walking up to the car. Because Whitaker approached the car in violation of the Fourth Amendment, Davis reasons, the district court should have suppressed the evidence obtained by Whitaker as fruit of an illegal seizure. *See Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Davis's argument founders on the premise that Whitaker seized him when he walked up to the Oldsmobile to make inquiries. A seizure occurs when a reasonable person would not feel at liberty to leave the presence of the police, or if leaving is impractical, when a reasonable person would not feel free to "decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* 501

U.S. 429, 435–37, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *United States v. Jerez,* 108 F.3d 684, 689 (7th Cir.1997). But as both the Supreme Court and our court have recently reiterated, a seizure does not occur when the police simply approach persons on the street and pose questions, ask for identification, or request consent to search their belongings–provided that the officers do not induce cooperation by coercive means. *United States v. Drayton,* 536 U.S. 194, 122 S.Ct. 2105, 2110, 153 L.Ed.2d 242 (2002); *United States v. Childs,* 277 F.3d 947, 950 (7th Cir.2002) (en banc); *see also Bostick,* 501 U.S. at 434–35, 111 S.Ct. 2382; *Royer,* 460 U.S. at 497, 103 S.Ct. 1319. True, the time needed to hear an officer's question and decide whether to answer or refuse to answer causes delay, but that delay does not constitute a seizure. *Childs,* 277 F.3d at 950. Thus, police officers can make consensual inquiries without any suspicion that criminal activity is afoot, and an individual's decision not to respond or cooperate–without more–does not provide justification for a subsequent detention or seizure. *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *Bostick,* 501 U.S. at 437, 111 S.Ct. 2382; *INS v. Delgado,* 466 U.S. 210, 216–17, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

Here Whitaker walked up to Davis's car and asked what he and Divine were doing. Whitaker did not pull Davis over, command him to stop, block his path, use a strong tone of voice, bring other officers with him, display his gun, or physically touch Davis. *See Bostick,* 501 U.S. at 437, 111 S.Ct. 2382; *Michigan v. Chesternut,* 486 U.S. 567, 575, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Indeed, Whitaker did nothing to suggest that Davis could not leave the scene until he told him to get out

of the car, and by then Whitaker had probable cause to arrest Davis for drunk driving, since he had smelled alcohol on Davis's breath and observed his bloodshot eyes, slurred speech, and slow reactions. *See, e.g., United States v. Benjamin,* 995 F.2d 756, 759 (7th Cir.1993).

■ Davis responds with two reasons why a reasonable person in his situation would not have felt free to ignore Whitaker or drive away when the officer approached. First, Davis suggests that he was constrained by the large police presence at the scene. The problem with that argument, however, is that there is no reason to believe that anyone other than Whitaker paid attention to Davis while he was stopped at the intersection. Davis did elicit testimony from Divine that someone shouted for him to shut off his engine as he pulled up to the stop sign. And Divine, as well as another witness, also testified that the oversized police van in which Whitaker arrived prevented Davis from driving through the intersection. But the district court found that the testimony on these points–which conflicted with testimony from Whitaker and a federal marshal involved in the raid, as well as Davis's confession–lacked credibility, and that finding is not clearly erroneous. *See, e.g., United States v. Pedroza,* 269 F.3d 821, 825–26 (7th Cir.2001). Given the resolution of the facts by the district court, there is no credible evidence that the scale of the police action would have kept a reasonable person from driving away.

■ Davis also suggests that a reasonable person would not have felt free to leave or ignore Whitaker given that Whitaker was on foot and thus could not have caught up to him had he driven off. Yet that contention is equally unavailing. Interrogating automobile occupants can be more intrusive than questioning pedestri-ans–for example, when the police stop a car in transit to make inquiries. *See Mendenhall,* 446 U.S. at 556–57, 100 S.Ct. 1870. This disparity between automobile and pedestrian stops dissipates, however, when the police approach a car, such as Davis's Oldsmobile, that is already stopped of the driver's own volition. *United States v. Summers,* 268 F.3d 683, 687 (9th Cir.2001); *United States v. Kim,* 25 F.3d 1426, 1430 & n. 1 (9th Cir.1994); *see also United States v. Jefferson,* 906 F.2d 346, 349–50 (8th Cir.1990). Because the police may walk up to parked vehicles to ask questions of the occupants, Davis's argument gains nothing from the fact that Whitaker was on foot and he in a car. The district court therefore properly denied the motion to suppress, and its judgment is

AFFIRMED