UNITED STATES of America, Plaintiff–Appellee,

v.

Eugene A. BLACK, Defendant–Appellant.

No. 03–1209.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 20, 2003.

Decided Aug. 20, 2003.

Ruth Hennage, Office of the United States Attorney, South Bend, IN, for Plaintiff–Appellee.

Eugene A. Black, Terre Haute, IN, pro se.

Before BAUER, KANNE, and EVANS, Circuit Judges.

## ORDER

Eugene Black entered a conditional guilty plea to conspiracy to distribute more than fifty grams of crack, 21 U.S.C. §§ 846, 841(a)(1), reserving the right to challenge on appeal the denial of a motion to suppress his post-arrest statements and physical evidence taken from him and from his residence. Black was sentenced to 96 months' imprisonment and 5 years' supervised release. He filed a timely notice of appeal, but his appointed counsel now seeks to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1976), because he considers the appeal frivolous. We notified Black about his lawyer's *Anders* motion, *see* Cir. R. 51(b), but he has not responded. Because counsel's supporting brief is facially adequate, we limit our review of the record to the potential issues that counsel identifies. *See United States v. Maeder*, 326 F.3d 892, 893 (7th Cir.2003); *United States v. Tabb*, 125 F.3d 583, 584 (7th Cir.1997). We grant counsel's motion and dismiss the appeal.

Counsel first considers whether Black might argue that the district court erred in refusing to suppress the physical evidence. In particular counsel contemplates arguing that a search of Black incident to his arrest was unlawful because the arrest was not supported by probable cause, and that the warrantless search of the home he shared with his mother was illegal because, contrary to the district court's findings, his mother did not give voluntary consent. In reviewing such an argument we would examine questions of law *de novo* and findings of fact for clear error. *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir.2002). We agree with counsel that a challenge to either search would be frivolous.

Before denying Black's motion to suppress, the district court conducted an extensive suppression hearing at which the government established that authorities confronted Black only after identifying him as the source of crack sold on two occa-

sions by dealer Emanual Wilson to an undercover detective. In the leadup to the first transaction on July 17, 2001, Wilson arrived at the carwash where the deal was to take place but told the "buyer," a detective from the Fort Wayne Police Department, that he needed more time to make the delivery because the crack was still "cooking." Wilson then departed, and so did a heavy-set black male who had followed Wilson to the carwash in a rented, burgundy Chevrolet Lumina with license plate 97X1818. Approximately thirty minutes later surveillance officers watching a parking lot across the street from the carwash saw Wilson exit his own car, enter the Lumina, and apparently exchange something with the driver before getting back into his own car. Wilson then drove to the carwash, sold the detective two and one-half ounces of crack for $1,400, and drove back to the parking lot where again something apparently exchanged hands between himself and the driver of the Lumina. Officers then tailed the Lumina to an address on Weisser Park Drive in Fort Wayne.

Wilson made another sale to the detective on July 24, this time for four and one-half ounces. He was arrested immediately afterward and agreed to cooperate. Government witnesses, including Wilson, testified at the suppression hearing that after his arrest Wilson told investigators that Eugene Black, whom he described as a tall, heavy-set black male whose mother worked at Verizon, had fronted the crack delivered to the detective and was expecting Wilson to bring him the sale's proceeds. Wilson said he had picked up the crack at Black's residence on Weisser Park Drive. Wilson also confirmed that Black had supplied the crack he sold to the detective on July 17; Black was driving a maroon rental car when he delivered the crack and later picked up his money in a parking lot across the street from the carwash.

Wilson was still being debriefed, according to the government witnesses, when he received several incoming calls on his cell phone from a number he identified as Black's. Wilson called back after the investigators set up a tape recorder, and when he did the voice on the other end demanded to know where Wilson was at and what he was doing. Wilson made up an excuse for the delay in finding Black and promised to meet him at a local restaurant within 10 to 30 minutes; instead, two officers approached Black at the restaurant and asked if he would speak with them at the police station. Both officers patted down Black before driving him to the station, and at some point after they got there Black was formally arrested. He was searched, and the police found money, a pager, a cell phone, and a rental contract for the Lumina dated July 13.

Meanwhile, investigators using information supplied by Wilson had confirmed that a Eugene Black lived at 2817 Weisser Park Drive. No one was home, so two officers went to the workplace of Black's mother, Bonnie Black, and sought her permission to conduct a search. Ms. Black, according to the officers, confirmed that Eugene indeed lived with her and agreed to permit a search. She elected to go with them to the house and, once there, signed a written consent form. The officers then found more than $1,000 in currency in Black's bedroom, several guns in various parts of the house, and a pan, measuring cup, and plastic bags—all with traces of white residue—in the kitchen. Ms. Black also testified at the suppression hearing, and although she insisted that she executed the written consent only after the search ended and in fact had told the officers they could look only in Black's bedroom, the district court found the two police officers more credible.

■ As counsel correctly notes, the district court's conclusion that authorities had probable cause to arrest Black when they first encountered him at the restaurant is unassailable. Probable cause exists when "the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir.2000). Investigators had observed Wilson meet a heavy-set black male immediately before and after selling crack to the undercover detective on July 17, and after Wilson's arrest on July 24 he received unsolicited calls demanding to know where he was and why he was delayed. In the officers' presence Wilson agreed to meet the caller at the restaurant, and it was Black—who fit the description of the man driving the Lumina on July 17—who showed up at the restaurant. In light of Wilson's identification of Black as his supplier and the investigators' own observations corroborating Wilson's statement, probable cause was established. *See United States v. Funches*, 327 F.3d 582, 586 (7th Cir.2003) (holding that probable cause existed when trained narcotics officers observed what they believed to be a drug transaction); *United States v. Hayes*, 236 F.3d 891, 894 (7th Cir.2001) (holding that eyewitness accounts and an officer's observations established probable cause). Thus, Black's arrest and the search incident to that arrest were valid, *see Jackson*, 300 F.3d at 746, and it matters not that a full search was not conducted until Black reached the police station, *United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) ("[S]earches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention.").

■ Even less susceptible to appellate challenge would be the district court's finding that Ms. Black consented to the search of the residence on Weisser Park Drive. Consent is a factual determination, *United States v. Raibley* 243 F.3d 1069, 1075 (7th Cir.2001), and counsel appropriately recognizes that the district court was faced with a classic credibility decision and resolved it in favor of the officers who testified that Ms. Black had freely executed written permission to search. We would review this credibility determination deferentially and reverse it only if clearly erroneous, *United States v. French*, 291 F.3d 945, 951 (7th Cir.2002); *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir.2001), which the court's finding in this case was not.

■ Counsel next questions whether Black might challenge his prison term. The parties were in accord as to the relevant guidelines calculations, and both sides also agreed that Black should receive exactly the 96–month term that he got. At best, then, Black forfeited any conceivable sentencing issue that he might have raised, *United States v. Smith*, 332 F.3d 455, 459 (7th Cir.2003) (stating that the defendant forfeited review of an issue by inadvertently failing to raise it in the district court), but regardless he also executed as part of his plea agreement a broad waiver promising to forego an appeal of his sentence "on any ground." We would uphold this appellate waiver unless the agreement of which it is a part can be nullified, *United States v. Hare*, 269 F.3d 859, 860 (7th Cir.2001), and Black has never suggested either to this court or to the district court that he wants his guilty plea set aside. The appellate waiver would thus bind him, and so any challenge to his prison term necessarily would be frivolous. *See United States v. Whitlow*, 287 F.3d 638, 640 (7th Cir.2002) ("We have held time and again that a waiver of appeal stands or falls with the rest of the bargain."); *United States v. Wenger*, 58 F.3d 280, 283 (7th Cir.1995).

888

■ Finally, Black's counsel, who did not represent him in the district court, considers whether Black might contend on appeal that trial counsel rendered ineffective assistance. But in his *Anders* brief counsel merely elaborates on the ways that his counterpart in the district court was *effective*—e.g., by filing a motion to suppress and carefully examining the government's witnesses during the suppression hearing—rather than identify any perceived shortcoming in trial counsel's performance. We have said frequently that claims of ineffective assistance are better saved for collateral review because most will fail without development of facts outside the record. *See, e.g., United States v. Schuh,* 289 F.3d 968, 976 (7th Cir.2002).

So it is here. Unless we are directed to a specific act or omission underlying the contention that trial counsel's performance was potentially deficient, we would have no reason to question the presumption that Black's former lawyer provided constitutionally adequate representation. *See United States v. Farr,* 297 F.3d 651, 657–58 (7th Cir.2002). If there is any basis for arguing that trial counsel was ineffective, Black is free to press the point in a motion under 28 U.S.C. § 2255.

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.