**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 19, 2006
Decided June 7, 2006

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 05-3972

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>*v.*<br><br>JAMARCUS A. TUCKER,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division<br><br>No. 1:05CR011TLS<br><br>Theresa L. Springmann,<br>*Judge.* |

**O R D E R**

Jamarcus Tucker dropped a handgun to the ground while attempting to flee from a law enforcement officer during an investigatory stop; he was subsequently charged and convicted of possession of a firearm by a felon. Tucker moved to suppress the handgun alleging that the stop and pat-down search violated *Terry v. Ohio*, 392 U.S. 1 (1968), and the district court denied the motion. Tucker appeals, and we affirm.

## I. Background

Tucker was arrested in January 2005 after he fled from a police officer in Fort Wayne, Indiana, who was frisking him during an investigatory stop. A search incident to the arrest revealed that Tucker was in possession of a small amount of

cocaine (crack).  The police recovered the gun Tucker cast aside during his flight. He was arrested and charged with possession of a gun by a felon, 18 U.S.C. § 922(g)(1), and crack cocaine, 21 U.S.C. § 844(a).  Tucker moved to suppress only the gun on the basis that the police detention and subsequent search of him was without reasonable suspicion.

At the evidentiary hearing on Tucker's motion, the government called Officer Cory Thomas of the Fort Wayne Police Department, who had searched and arrested Tucker, as well as Officer Benjamin Springer, Thomas's back-up.  Thomas testified that at about 9:00 p.m. on January 2, 2005, he was dispatched to investigate an anonymous phone call tip that suspicious persons were selling narcotics on the porch of an abandoned house at 2614 Reed Street in Fort Wayne, Indiana.  Upon reaching the 2600 block of Reed Street in his squad car, Thomas observed three people as they were descending down the steps from the porch of the vacant house at 2614 Reed Street while a fourth person on the sidewalk approached them.  The neighborhood was what Thomas referred to as being located in a "relatively high-crime area."  Although the area was poorly lighted, Thomas said, he could see that the house "looked run down" and had neither curtains nor lights.  The street lights behind the house were even visible through the front windows.  From his experience, Thomas stated, he knew that questionable individuals gathered at unoccupied houses such as this one to carry on the nefarious drug trade.  He did not state nor answer questions as to whether he was familiar with this particular house or if he had previously arrested anyone at this house.

Officer Thomas went on to state that the three individuals joined the fourth person on the sidewalk just as he stopped his squad car in front the house; he then exited his car and asked "what was going on."  When no one responded, Thomas asked each of them for identification.  Only Tucker produced identification; his companions—Brandon Tucker (Tucker's brother), Terrell Hooker, and Tanisha Royal—only gave their names and birth dates.  At that moment, Officer Springer arrived on the scene as back-up squad support.  Once Springer exited his car, Thomas returned to his squad car to run computer checks for criminal histories and outstanding warrants.  The background checks proved negative except for Tucker, who had several convictions including felonies (firearms and narcotics).

At this time, Officer Thomas explained, with this knowledge he suspected that Tucker might be armed.  This suspicion was heightened, he added, because the tip that prompted the stop was drug-related; in his experience, he stated, "Where there's drugs, there's always firearms."  Thomas thus decided to rejoin Officer Springer because he did not think it "wise" to leave Officer Springer alone with Tucker without having conducted a pat-down search.  After searching one of Tucker's companions and finding nothing illegal, Thomas asked Tucker if he "had

anything on him that I needed to know about." Tucker did not reply but, rather, spread his arms and, upon Thomas's request, placed his hands on top of his head. Thomas patted Tucker down and felt what he thought was a magazine for a Glock handgun in the left pocket of his jacket; Thomas testified that he recognized the shape of the magazine because he carries a Glock and that he unloads and reloads daily. Assuming the presence of a firearm after finding the magazine, Thomas proceeded to handcuff Tucker for safety reasons before attempting to seize the clip from the jacket pocket and informed Tucker that he would be handcuffed "for officer safety" but was not under arrest.[1]

Tucker immediately pushed the officer aside and fled before he could be handcuffed. Officer Thomas pursued him for several blocks, and during the chase he saw a handgun magazine fall from Tucker's left jacket pocket. Thomas testified that, shortly after the magazine fell, he saw Tucker pull a handgun from the front of his pants and throw it to the ground. Thomas eventually apprehended Tucker with the assistance of Officer Springer and placed him under arrest for resisting a police officer. Upon searching him Thomas discovered a small amount of crack cocaine in Tucker's jacket pocket and recovered the gun, a loaded 40-caliber Glock, from the area where he had observed Tucker abandon it. He was unable to find the magazine, however. Thomas's testimony was largely corroborated by Officer Springer, who also stated that, in his professional experience, the neighborhood in which the stop took place had the reputation of being "a very high-crime area."

At the hearing Tucker presented but one witness, his brother Brandon, who stated that he was the individual with no company that Officer Thomas saw walking on the sidewalk to meet Tucker, Hooker, and Royal. In contrast to Thomas's testimony, Brandon stated that Tucker was not walking from the porch of the house at 2614 Reed Street at the time that Thomas observed and stopped him; Tucker instead was walking from his car parked down the street.

---

[1]     We have previously recognized police officers' growing reliance on using handcuffs during investigatory stops, *see United States v. Askew*, 403 F.3d 496, 507 (7th Cir. 2005); *United States v. Tilmon*, 19 F.3d 1221, 1224-25 (7th Cir. 1994); and noted that the use of handcuffs does not automatically transform an investigatory stop into an arrest, *see United States v. Yang*, 286 F.3d 940, 950 (7th Cir. 2002) ("[T]he handcuffing and transportation of [appellant] back to the international terminal did not convert the stop into an arrest."), especially if the handcuffs are used to ensure the officers' safety, *see United States v. Glenna*, 878 F.2d 967, 972-73 (7th Cir. 1989) (ruling that the use of handcuffs did not transform an investigatory stop to an arrest when the officer's safety was at risk).

The district court denied Tucker's motion, finding that Brandon Tucker was not credible. The court adopted the testimony of Officer Thomas instead, and concluded that his testimony showed that he had reasonable suspicion to stop and pat-down Tucker: "Thomas had a reasonable suspicion that [Tucker] may have been involved in drug activity, given his location at an abandoned house in a high-crime area . . . . [where his] experience also told him that where there are drugs, there are firearms." Judges in the federal system, whether they are trial or appellate, do not operate in a vacuum shielded from knowledge of drug operations in the real world. *See United States v. Hatchett*, 31 F.3d 1411, 1420 (7th Cir. 1994); *United States v. Tolson*, 988 F.2d 1494, 1504 (7th Cir. 1993); *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir. 1984). The court thus also found that Tucker's inability to explain what he was doing on the porch of the house, along with his history of drug and firearms offenses, supported Thomas's investigatory stop and subsequent pat-down search for weapons at this time. Tucker at this juncture entered a conditional guilty plea to violating 18 U.S.C. § 922(g)(1), which states that it is illegal for an individual to possess a firearm "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." Tucker preserved his right to challenge the suppression ruling on appeal, however. He exercises that right now and appeals, attacking the district court's denial of his motion to suppress by renewing his argument that Thomas lacked reasonable suspicion to stop and search him.

## II. Analysis
## A. Standard of Review

In reviewing a denial of a motion to suppress, we review de novo the question of the existence of reasonable suspicion. *United States v. Hagenow*, 423 F.3d 638, 641-42 (7th Cir. 2005).

## B. Reasonable Suspicion

A police officer may conduct an investigatory stop if the officer has a reasonable suspicion supported by articulable facts that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Baskin*, 401 F.3d 788, 791 (2005). To determine whether an officer's suspicion of criminal activity was reasonable, we examine the totality of the circumstances as they appeared to the officer at the time of the stop. *United States v. Hendricks*, 319 F.3d 993, 1001 (7th Cir. 2003). Those circumstances include the officer's experience and the suspect's behavior and characteristics. *United States v. Lenior*, 318 F.3d 725, 729 (7th Cir. 2003); *see also Anderer v. Jones*, 385 F.3d 1043, 1076 (7th Cir. 2004) (Coffey, J., dissenting) (defining a *Terry* stop as "an investigatory questioning supported by reasonable suspicion" under the totality of the circumstances).

In arguing that Thomas lacked reasonable suspicion to stop him, Tucker relies on *Florida v. J.L.*, 529 U.S. 266 (2000), to assert that the anonymous telephone call reporting suspicious individuals on the porch of the house at 2614 Reed Street did not rise to the level of specificity and reliability required to provide a reasonable suspicion that illegal activity was occurring. However, *J.L.* does not control this case because Officer Thomas was not acting solely on the basis of the anonymous telephone call. Indeed, the caller conveyed nothing that Thomas could not observe for himself when he arrived on the scene: (1) Tucker was loitering with two other individuals on the porch of an abandoned house; (2) it was after dark on a January night; (3) the house was in what Thomas considered to be a "relatively high-crime area"; and (4) Thomas knew that vacant houses in that area were used to conduct drug deals. These facts were personally known to Thomas and, in our opinion, were sufficient for the officer to reasonably conclude that criminal activity was afoot.

Tucker attempts to discount Officer Thomas's observations by attacking the reasonableness of his belief that the stop occurred in a "relatively high-crime area." Tucker argues that the officer could not reasonably have believed he was in a "relatively high-crime area" because at the suppression hearing he was unable to provide a specific crime-rate for the neighborhood. It is difficult to ascertain from Tucker's argument what statistical information he would have required Thomas to possess at the time of the stop, how detailed that information would have had to be, and from what qualified source was he to gather this information. But, in any event, Thomas was not required to know the crime-rate for the neighborhood before he could reasonably conclude that the house was, in fact, located in a "relatively high-crime area." *See Baskin*, 401 F.3d at 793 (rejecting petitioner's argument that "the government must produce 'specific data' establishing that a location is a 'high-crime area'" to support reasonable suspicion). Tucker's feeble attempt to undermine the officer's knowledge, experience, and observations is thus without merit.

Tucker further claims that, even if the initial stop was justified, Officer Thomas nonetheless lacked reasonable suspicion to conduct a pat-down for weapons because he did not observe anything that would lead him to believe that Tucker was armed. An officer is justified in conducting a pat-down search for weapons for his own protection or the protection of others if he can point to articulable facts supporting a suspicion that an individual is armed, *Terry*, 392 U.S. at 27, including a suspect's history of carrying a weapon, *see Jackson*, 300 F.3d at 746; *United States v. Mitchell*, 256 F.3d 734, 737 (7th Cir. 2001).

Tucker asserts that the fact that Officer Thomas did not frisk him first demonstrates that Thomas was not acting based on his knowledge of Tucker's criminal history, but rather shows that he was still acting on information provided

solely by the anonymous telephone call. According to Tucker, Thomas thus lacked reasonable suspicion that he was armed because the telephone call did not state that any of the suspicious individuals were armed. We are of the opinion that this argument is without merit. Not only is it common knowledge that drug-dealers are frequently armed, *see, e.g.*, *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (noting the "dangerous combination" of "drugs and guns"); *Bailey v. United States*, 516 U.S. 137, 139 (1995) (recounting prosecution expert witness "testified at trial that drug dealers frequently carry a firearm to protect their drugs and money as well as themselves"); *United States v. Koerth*, 312 F.3d 862, 870 (7th Cir. 2002) ("It is 'beyond dispute that drug traffickers are often armed and dangerous' . . . .") (quoting *United States v. Ocampo*, 890 F.2d 1363, 1369 (7th Cir. 1989)), Thomas stated at the evidentiary hearing that he decided to search everyone for weapons because of his knowledge of Tucker's criminal history involving firearms, and not because of the anonymous telephone call. Thomas was thus appropriately concerned for his and Officer Springer's safety, *see Jackson*, 300 F.3d at 746, and, in any event, "the requirement that an anonymous tip bear the standard indicia of reliability in order to justify a stop no way diminishes a police officer's prerogative, in accord with *Terry*, to conduct a protective search of a person who has already been legitimately stopped," *J.L.*, 529 U.S. at 274. The district court therefore did not err in finding that Thomas was justified in patting-down Tucker. *See Jackson*, 300 F.3d at 746.

### III.  Conclusion

The district court properly denied the Tucker's motion to suppress. We AFFIRM the judgment of the district court.