NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 3, 2009[*]
Decided February 25, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DANIEL A. MANION, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 09-2007

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 08 CR 12 |
| JAMES L. GOVAN, *Defendant-Appellant*. | Theresa L. Springmann, *Judge*. |

## O R D E R

James Govan pleaded guilty to possessing with the intent to distribute crack cocaine and carrying a firearm during and in relation to a drug trafficking crime, but in doing so reserved the right to appeal the district court's denial of his motion to suppress the crack and gun. Govan appeals, and we affirm.

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

Just before midnight on January 19, 2008, Officers Chris Drake and Doug Schwertfager of the Indiana State Excise Police were on patrol across the street from a liquor store in Fort Wayne, Indiana. From their unmarked vehicle and with the aid of binoculars, the officers observed two males who appeared to be under the age of 21 walking along the well-lit sidewalk in front of the store. The men stopped, faced each other, and appeared to exchange something. One of them, Marquel Marsh, then entered the liquor store, while the other man, later identified as James Govan, stood behind a pay phone on the storefront beyond the store clerk's view. After a few minutes, Marsh exited the store and met Govan. The two faced each other, made hand motions consistent with the exchange of an item, and resumed walking down the sidewalk.

Although they did not see the items the young men exchanged, the officers suspected that they had witnessed the furnishing of alcohol to a minor.[**] As the men began to cross the street, the officers drove toward them and activated their vehicle's emergency lights. The officers exited the vehicle, identified themselves as law enforcement, and asked the men for some form of identification. Neither had any. Officer Schwertfager dealt with Marsh and verified his identity and age (20) through the Indiana Bureau of Motor Vehicles database. Marsh informed Officer Schwertfager that he had purchased condoms at the liquor store and showed him the condoms and a receipt. Meanwhile, Officer Drake dealt with Govan who, after about five minutes of refusing to disclose his name, identified himself as Marcus Williams and gave a birth date of March 17, 1985. Officer Drake was unable to locate a person by that name and birth date in the Bureau of Motor Vehicles database. He then contacted Officer Chris Hoffman of the Fort Wayne Police Department who ran the name and birth date through a local database. Officer Hoffman was unable to locate a black male named Marcus Williams born on March 17, 1985, in the local system; he did discover, however, that there was an active arrest warrant for a black male who had that birth date—James Govan. Officer Hoffman relayed that information to Officer Drake, accessed Govan's photo by computer, and then informed Officer Drake that Govan had a scar above his eye. Officer Drake asked Govan to remove his hat and glasses. When the man complied, Officer Drake observed a scar above his left eye. Officer Hoffman then arrived on the scene and confirmed that the man matched the computer photo of James Govan. In order to be certain, Officer Hoffman asked the man for his social security number. Officer Hoffman checked the number he was given against the number from the James Govan entry in the local database and discovered that they matched except for two digits that had been transposed. The officers then placed Govan under arrest based on the outstanding warrant and for giving false information to police during the investigation of a crime. (Twenty minutes had elapsed between the initiation of the stop and Govan's arrest.) Officer Hoffman searched Govan and discovered baggies of crack cocaine and marijuana. After Govan was

---

[**] In Indiana, it is a misdemeanor for a person to furnish an alcoholic beverage to a minor. Ind. Code § 7.1-5-7-8(a). On the other side of the coin, it is also a misdemeanor for a minor to knowingly possess an alcoholic beverage. *Id.* § 7.1-5-7-7(a)(1).

transported to jail, Officer Hoffman searched him a second time and discovered a handgun in his coat pocket.

A grand jury indicted Govan for possessing with the intent to distribute crack cocaine (Count 1), being a felon in possession of a firearm (Count 2), and carrying a firearm during and in relation to a drug trafficking crime (Count 3). Govan filed a motion to suppress the crack and the gun, alleging they were the fruits of an unlawful investigatory stop. Following a hearing, the district court denied the motion. Govan then pleaded guilty to Counts 1 and 3 of the indictment pursuant to a conditional guilty plea wherein he reserved his right to appeal the district court's denial of his motion to suppress. The district court sentenced Govan to a term of 33 months' imprisonment on Count 1 and a consecutive term of 60 months' imprisonment on Count 3. Govan appeals the denial of his motion to suppress the crack and handgun.

On appeal, Govan argues that the crack cocaine and gun should have been suppressed because their discovery resulted from the officers' violation of his Fourth Amendment right to be free from unreasonable seizures. Specifically, he contends that Officers Schwertfager and Drake stopped him without reasonable suspicion that he was committing (or had committed) a crime. And even if the stop was justified at its inception, says Govan, the duration of the stop was unreasonable.

In reviewing a district court's denial of a motion to suppress, we examine its conclusions of law de novo and its factual findings for clear error, giving special deference to its credibility determinations. *United States v. Burnside*, 588 F.3d 511, 516–17 (7th Cir. 2009). Govan does not challenge the district court's findings of fact and concomitant credibility determinations. Hence, our review is limited to the district court's legal conclusion that the stop comported with the Fourth Amendment.

Under *Terry v. Ohio*, 392 U.S. 1 (1968), a law enforcement officer can conduct an investigatory stop of a suspect if he has a reasonable suspicion based on particular, articulable facts that criminal activity is afoot. *United States v. Hampton*, 585 F.3d 1033, 1038 (7th Cir. 2009). Whether an officer possessed reasonable suspicion is an objective inquiry based on the totality of the circumstances known to the officer at the time of the stop. *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008). The officer's action must be justified at its inception and reasonably related in scope to the circumstances that warranted the stop initially. *Jewett v. Anders*, 521 F.3d 818, 824 (7th Cir. 2008). The duration of the stop must be reasonable. *United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002).

Under Indiana law, it is a crime for a minor[***] to knowingly possess an alcoholic beverage. Ind. Code § 7.1-5-7-7(a)(1). The observations of the experienced excise officers gave

---

[***] A minor is a person less than 21 years of age. Ind. Code § 7.1-1-3-25.

rise to a reasonable suspicion that Govan was a minor in possession of alcohol.[****]  Standing in the well-lit area near the liquor store, Govan appeared to be under the age of 21—he was in fact only 22.  It was almost midnight when the officers saw Govan exchange an item with Marsh. While Marsh went inside the store, Govan stood behind a pay phone out of the store clerk's view, something a minor not wishing to arouse the suspicion of store personnel might do. After Marsh had tarried a few minutes in the store, he came out and had a face-to-face encounter with Govan; the two again appeared to exchange an item.  The officers did not actually see any items exchanged and the men's hand movements were susceptible of an innocent explanation, but given the circumstances it was reasonable for them to think that Govan had supplied Marsh with money to buy alcohol and that Marsh had done so and delivered it to him.  *See Illinois v. Wardlaw*, 528 U.S. 119, 125–26 (2000) (*Terry* stops are appropriate even where suspect's conduct is ambiguous and subject to an innocent explanation); *United States v. Grogg*, 534 F.3d 807, 810 (7th Cir. 2008) ("While certain behavior in isolation may have an innocent explanation, that same behavior, when viewed in the context of other factors at play, may amount to reasonable suspicion.").  Hence, the officers had a reasonable suspicion that Govan was a minor in possession of an alcoholic beverage. Accordingly, at its inception the investigatory stop of Govan did not offend the Fourth Amendment.

Govan argues that even if the stop were initially justified, the duration of the stop was unreasonable because the officers continued to detain him after they discovered that Marsh was 20 years old and had purchased condoms in the liquor store.  "There is no bright-line rule as to how long an investigative detention may last; instead we look to whether the police diligently pursued a means of investigating that was likely to confirm or dispel quickly their suspicions."  *United States v. Adamson*, 441 F.3d 513, 521 (7th Cir. 2006).  While Officer Schwertfager was dealing with Marsh, Officer Drake attempted to learn Govan's identity, which is generally permissible during an otherwise valid stop.  *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186 (2004) (observing that "it is well established that an officer may ask a suspect to identify himself in the course of a *Terry* stop").  The fact that the officers learned that Marsh was a minor did not dispel their reasonable suspicion that Govan was a minor in possession of alcohol:  Marsh still could have purchased alcohol in the store, perhaps with a fake identification or none at all, and given it to Govan.  And the condoms and receipt that Marsh produced did not necessarily dispel their reasonable suspicion that Govan was a minor in possession of alcohol: the apparent exchanges between Govan and Marsh before and after Marsh's visit in the store were still unexplained.  Moreover, within five minutes of the stop, Govan refused to reveal his name and then gave a false name that did not show up in the Bureau of Motor Vehicles database.  At that point, there was ample reason for Officer Drake to be suspicious that Govan was wanted for another crime, *see id.*, or had given him false

---

[****] At the time, Officer Drake was an 11-year veteran of the Indiana State Excise Police.  Officer Schwertfager had been on the job for two and a half years.

information during the investigation, which is itself a misdemeanor offense in Indiana, Ind. Code § 35-44-2-2(d)(1). The officers therefore had reasonable suspicion that Govan had committed a separate offense, which provided additional grounds for extending the stop and investigating further. They investigated the new suspicion by searching the local database. After learning Govan might be wanted on an arrest warrant, they looked to see if he had a scar above his eye and checked his social security number. All of these measures were aimed at confirming or dispelling the officers' suspicions raised by Govan's conduct, and Govan's continued detention (for less than 15 minutes) while these steps were taken was reasonable. *See Cady v. Sheahan*, 467 F.3d 1057, 1063 (7th Cir. 2006) (officers do not exceed the permissible duration of a stop where the extension of the stop is attributable to the suspect's evasive conduct).

In sum, the stop was lawful both at its inception and in its duration and thus provides no basis for excluding the crack and gun.[*****] Accordingly, the district court properly denied Govan's motion to suppress. We AFFIRM.

---

[*****] Because the stop was at all times consistent with the Fourth Amendment, we need not decide whether the outstanding arrest warrant might have been an intervening circumstance sufficient to dissipate the taint of an illegal stop and thus avert suppression of the crack cocaine and gun. *See United States v. Green*, 111 F.3d 515 (7th Cir. 1997).